IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>KENNETH PHILLIPS,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br><br>Case No. 2:04-CR-42 TS |

This matter came before the court on September 17, 2004, for hearing on Defendant's Motion to Suppress. The record was supplemented following the hearing and briefing was completed on April 21, 2005.

In his Motion to Suppress, Defendant moves to suppress evidence of the presence of ammunition and methamphetamine found in his house, as well as child pornography found on the hard drive of his computer removed from his house. He also challenges the affidavit in support of the search warrant (Affidavit). Defendant contends that information contained in the Affidavit from a confidential informant was not true because the confidential informant lied. He also says that the officer's statement about the officer's own investigation was either not correct or does not support the said information. Defendant

1

contends that he did not consent to allow access to his computer.  He further challenges whether the officers executed the warrant properly.

## I.  INITIAL RULINGS

At the hearing, the court made the following initial ruling on Defendant's *Franks*[1] claim.  The court found that Defendant failed to meet his burden of making a substantial preliminary showing that the affiant knew of, or recklessly disregarded, the falsity of the confidential informant's information and, if purged of those falsities, the affidavit would not be sufficient to support a finding of probable cause.  *U.S. v. Kennedy*, 131 F.3d 1371, 1375 (10th Cir. 1997).  Further, the court found that, even if the information that was obtained from the confidential informant was excluded from the search warrant, the affidavit would still be sufficient to show probable cause.  Accordingly, Defendant is not entitled to a *Franks* hearing.  *U.S. v. Kennedy*, 131 F.3d 1371, 1375 (10th Cir. 1997).

This ruling left for the evidentiary hearing only the issues of whether the scope of the search exceeded the warrant; whether Defendant consented to allow the officers to access his computer; and whether or not Defendant was given a *Miranda* warning prior to the search of the computer.

## II.  FINDINGS OF FACT

On December 10, 2003, in the early hours of the morning, officers executed a search warrant of a home located in Salt Lake County, Utah (the home).  The search followed a month-long investigation of suspected drug dealing out of the home where

---

[1] *Franks v. Delaware*, 438 U.S. 213 (1983).

Defendant lived together with his mother and girlfriend.  The search warrant authorized a search for: "Controlled substances, i.e. methamphetamine and drug paraphernalia used to transport, store, contain, package, ingest, sell, transfer, et cetera, controlled substances, . . .."  The warrant did not contain authorization to search a computer.

The warrant was executed by the Salt Lake County SWAT team because of information that led the officers to believe that there was a substantial risk, including risks related to narcotics and the possibility of firearms.   After the SWAT team secured the area, they withdrew and turned the scene over to other officers.  When the warrant was executed, Defendant Kenneth Clifford Phillips (Defendant) was found in his downstairs bedroom.

During the search, officers found such items as methamphetamine, drug paraphernalia, a partially assembled methamphetamine lab, and ammunition.

Defendant was removed to an upstairs bedroom where he was read his *Miranda* rights and signed a form acknowledging he understood them.  In the meantime, one of the officers, an agent with the Utah Department of Public Safety and assigned to the State Bureau of Investigation (the Agent), was downstairs where he noticed a turned-on computer, with a colored screen saver emblem moving on the screen.  He also noticed that there were several other unconnected hard drives spread throughout the room.  In the Agent's experience in drug trafficking, sometimes information relating to drug trafficking is kept on computers.  Accordingly, the Agent thought there might be some information on the computer that might assist in the investigation.  He went upstairs to ask Defendant for permission to open the computer.  He found the Defendant calmly and cooperatively

answering other officers' questions. The Agent ascertained that Defendant had been *Mirandized* and asked his permission to look at the computer. Defendant consented.

The Agent returned downstairs and went to the computer. He looked under "my files" and noticed that there appeared to be many picture files. He did not open any documents, but looked at the picture files. One of the files appeared to depict a young and unclothed female.

The Agent determined that it would be advisable to take the computer hard drives into evidence. He spoke with forensic personnel, who advised that hard drives should be disconnected. The Agent disconnected the hard drives and they were transported back to the ATF office. Defendant was also transported back to the ATF office.

Back at the ATF office, Defendant was placed in an interview room and provided with food and a soft drink. Defendant was escorted out the building briefly for the purpose of smoking. The Agent spoke to Defendant about several matters. Eventually, he told Defendant that he wanted to look at the computer for child pornography. Defendant responded that he had not done anything wrong and gave permission to look at the hard drive.

Defendant testified that he turned the computer off before he went to bed. He testified that he told the officers they could look at the computer, but doesn't recall giving them permission to turn the computer on or to search the hard drive. His testimony is inconsistent. He says he does not recall giving permission to search the hard drive but also testified that the officers asked "if they could look at the hard drive, if they could look

at the computer," and that he answered: "I said I don't mind. There is nothing on the computer illegal." Trans. at 43.

Defendant also testified that when the warrant was executed he had been high for several months, having smoked methamphetamine on a daily basis for a couple of months. He also testified that he was still in shock when he gave consent because the SWAT team had entered at gunpoint and that guns were still being brandished when he was asked for consent about the hard drive, which he testified occurred at the home when he was still in his bedroom.

The court finds Defendant's testimony to be not credible. By his own admission, Defendant had been continuously on drugs for at least two months, including the night in question. The court finds the officer's testimony to be credible and supported by other evidence. The court finds that the computer was turned on and also that the Agents asked for and obtained Defendant's voluntary consent to look at its contents and later asked for and obtained his consent to search the hard drive.

The court does not find the expert testimony on the contents of the computer's hard drive to be inconsistent with that of the officers.

The court finds that Defendant's consent was voluntary. Prior to the first consent, the officers were in the house approximately an hour before the Agent asked Defendant for his consent to search his computer. At the time the first consent was requested, Defendant was upstairs, calmly and cooperatively answering other questions. His rights had been explained to him.

At the time of the second consent, Defendant had been removed to an interview room in a different location. Defendant was again cooperatively answering other questions on other subjects. He had been provided food and drink, and taken outside and allowed to smoke. The Agent specifically informed Defendant that the purpose for the search of the hard drive was to locate child pornography. Defendant denied any such wrongdoing and consented.

### III.  DISCUSSIONS AND CONCLUSIONS

There were three issues presented for the evidentiary hearing: whether the scope of the search exceeded the warrant; whether Defendant consented to allow the officers to access his computer; and whether or not Defendant was given a *Miranda* warning prior to the search of the computer. Pursuant to its findings, above, the court has found the issues of consent and the *Miranda* warning in favor of the government.

The court found, above, that the consent to search was voluntary. The government has shown that the consent was "unequivocal and specific and freely and intelligently given" and "was given without implied or express duress or coercion." *U.S. v. Taverna*, 348 F.3d 873, 878 (10th Cir. 2003)(quoting *United States v. McRae*, 81 F.3d 1528, 1537 (10th Cir. 1996)(other internal quotations omitted)).

On the third issue, there is nothing in the record to support the position that the search warrant was not properly executed. It is true that the computer was not mentioned in the search warrant. However, because the search of the computer was undertaken with the voluntary consent of Defendant, the scope of the search warrant is not relevant to the computer. For this reason, the cases cited by Defendant are inapposite because they

6

involve search warrants limiting the searches of computers. *See In the Matter of the Search of 3817 W. West End, First Floor Chicago, Illinois 60621*, 321 Supp.2d 953 (N. D. Ill. 2004)(search warrant for computer) and *U.S. v. Carey*, 172 F.3d 1268 (10th Cir. 1999)(consent search of personal property in apartment and search warrant for computer for evidence of sale and distribution of drugs); *see also U.S. v. Riccardi*, 405 F.3d 852, 862 (applying *Carey* factors to specificity of search warrant for computer). What is relevant is that Defendant gave voluntary consent to first search the computer, and later to search the hard drive.

> The standard for measuring the scope of an individual's consent to search is that of "objective reasonableness," asking what the typical reasonable person would have understood to be the scope of his or her consent under the circumstances. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). The scope of a consent to search "is generally defined by its expressed object, and is limited by the breadth of the consent given." *United States v. Elliott,* 107 F.3d 810, 814- 15 (10th Cir. 1997).

*U.S. v. Pena,* 143 F.3d 1363, 1367-1368 (10th Cir. 1998).

Defendant contends that Defendant's consent to search the computer is invalid because the Agent did not describe what he was looking for, what kind of search he would conduct, or the methods to be used. The court disagrees. Defendant initially gave consent to a non-specific search of the computer. A typical reasonable person would have understood to be the scope of his or her consent under these circumstances to be information the Agent could access by looking through readily accessible files. When so doing, the Agent found information relating to child pornography and he took the hard drives into custody. Subsequently, the Agent informed Defendant of the specific suspicion of child pornography and obtained Defendant's consent to further search the hard drive.

The court finds the initial and subsequent searches were within the scope of Defendant's consent.

Based on the foregoing, the court finds and concludes that there is no Fourth Amendment violation.

## IV.  ORDER

For the foregoing reasons, it is therefore

ORDERED that Defendant's Motion to Suppress is DENIED.  It is further

ORDERED that the time from the filing of the Motion to Suppress through the date of entry of this order is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J).

DATED  May 20, 2005.

BY THE COURT:

_____
TED STEWART
United States District Judge